UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                :

CITY OF NEW YORK,

                :

            Plaintiff,

                :

      – against –

                :

BERETTA U.S.A. CORP., et al.,

                :

            Defendants.

                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**FILED**

IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ APR 27 2005 ★

BROOKLYN OFFICE

MEMORANDUM & ORDER
ON MOTION FOR
RECONSIDERATION
00-CV-3641 (JBW) (CLP)

APPEARANCES:

For Plaintiff City of New York:

        Eric Proshansky
        Corporation Counsel of the City of New York
        100 Church St., Room 3-158
        New York, NY 10007
        By: Eric Proshansky
            Richard J. Costa
            Melanie Ash

For Defendant Beretta U.S.A. Corp.:

        Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC
        233 E. Redwood St.
        Baltimore, MD 21202
        By: Lawrence S. Greenwald

For Defendant Browning Arms Co.:

        Friday, Eldredge & Clark, LLP
        2000 Regions Center
        400 W. Capitol Ave.
        Little Rock, AK 72201



By: Jonann E. Chiles

For Defendant Colt's Manufacturing Co., Inc.:

> Jones Day
> 2727 North Harwood St.
> Dallas, TX 75201
> By: Thomas E. Fennell
> Mark R. Hall

For Defendants Forjas Taurus, S.A. and Taurus International Manufacturing, Inc.:

> Budd Larner, P.C.
> 127 Peachtree St., NE, Suite 636
> Atlanta, GA 30303
> By: Timothy A. Bumann

For Defendant Glock, Inc.:

> Renzulli, Pisciotti & Renzulli, LLP
> 300 East 42nd St.
> New York, NY 10017-5947
> By: John F. Renzulli
> Scott C. Allan

For Defendant Smith & Wesson Corp.:

> Shook Hardy & Bacon, LLP
> 2555 Grand Blvd.
> Kansas City, MO 64108
> By: Stacy E. Deere

For Defendant Sturm, Ruger & Co., Inc.:

> Wildman, Harrold, Allen & Dixon, LLP
> 225 W. Wacker Dr.
> Chicago, IL 60606
> By: James P. Dorr

For Defendants AcuSport Corp.; Alamo Leather Goods, Inc.; Bangers, L.P.; Bill Hicks & Co.; Brazas Sporting Arms, Inc.; Camfour Inc.; Chattanooga Shooting Supplies, Inc.; Davidson's Supply Co., Inc.; Dixie Shooters Supply, Inc.; Ellet Brothers, Inc.; Euclid Ave. Sales Co.; Faber Brothers, Inc.; Glen Zanders Fur and Sporting Goods Co.; Hicks, Inc.; Kiesler Police Supply,

Inc.; Lew Horton Distributing Co.; Lipsey's Inc.; MKS Supply Co.; Riley's, Inc.; RSR Group, Inc.; Ron Shirk's Shooter's Supplies, Inc.; Southern Ohio Gun, Inc.; Sports South, Inc.; Valor Corp.; Walter Craig, Inc.; Williams Shooter's Supplies:

> The Chiafullo White Group, LLP
> 12 New Providence Road, Suite 201
> Watchung, NJ 07069
> By: Christopher M. Chiafullo

For Bureau of Alcohol, Tobacco, Firearms and Explosives:

> Bureau of Alcohol, Tobacco, Firearms and Explosives
> Office of Chief Counsel
> 650 Massachusetts Avenue, N.W., Room 6100
> Washington D.C. 20226
> By: Barry Orlow

> United States Attorney's Office
> Eastern District of New York
> 1 Pierrepont Plaza, 14th floor
> Brooklyn, NY 11201
> By: Elliot M. Schachner

JACK B. WEINSTEIN, Senior District Judge:

## I. Introduction

The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") moves for

reconsideration of this court's order of April 1, 2005, which affirmed the Magistrate Judge's

order of February 22, 2005, interpreting and affirming her earlier grant of discovery on May 19,

2004. *See City of New York v. Beretta U.S.A. Corp.*, 00-CV-3641, 2005 WL 741794, at *13

(E.D.N.Y. Apr. 1, 2005). On December 8, 2004, the Consolidated Appropriations Act of 2005

("the 2005 Act") limiting discovery of ATF materials was effective. ATF's position is that the

2005 Act "was a Congressional enactment that was enacted in response to this court's orders and

decisions," in order to prevent the disclosure ordered in the instant case. Apr. 26, 2005 Hrg. Tr.

at 2.

The motion for reargument is granted. The April 1, 2005 order is reaffirmed; it is deemed incorporated in this memorandum and order. In addition to being supported by the facts and the law, this decision avoids an important constitutional federalism issue.

ATF has somewhat shifted its position from its original Rule 72 motion. In that motion, it sought retroactive application of the 2005 Act, which it characterized as a statutory change in procedure. In its present motion for reconsideration ATF argues that the 2005 Act merely affected prospective relief. Since it has not yet turned over critical material as the Magistrate Judge ordered, so its argument goes, the 2005 Act allows ATF now, "prospectively," to ignore the prior orders of the Magistrate Judge.

## II. Facts

### A. Chronology

#### 1. *Information Produced in* NAACP *Case*

In a prior action, *NAACP v. Acusport*, 210 F.R.D. 268 (E.D.N.Y. 2000), the NAACP obtained essentially the same type of documents from ATF that are now sought by the City. ATF there produced firearms data for the period 1989 through 2000. Law enforcement sensitive trace data were made available in the *NAACP* case subject to the terms of an Order of Protection restricting the dissemination and use of sensitive data. *Id.* at 429-45. ATF also produced data to the NAACP outside of the *NAACP* Order of Protection, based on its conclusion that certain elements were not law enforcement sensitive. It was routinely providing such information in response to requests under the Freedom of Information Act, 5 U.S.C. § 552.

#### 2. *City's April 5, 2004 Letter*

4

On April 5, 2004, the City wrote to ATF defining the ATF trace data it sought:

> Pursuant to the directions received from Judge Weinstein and Magistrate Judge Pollak, please allow this letter to serve as notice to the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") of the City of New York's request for information related to the ATF's Firearms Trace Database:
>
> i) The City requests all information made available by the ATF to the parties in the NAACP case, under the same terms and conditions that govern disclosure in that case . . . .

Apr. 5, 2004 Ltr. at 1. Following receipt of the letter, ATF requested that the City provide this request in the form of a subpoena.

### 3. *City's April 2004 Subpoena*

On April 20, 2004, the City served ATF with a subpoena calling for production of:

(1) the firearms tracing system ("FTS") data included in the Oracle Table & Data Elements previously produced by ATF under protective order in the *NAACP* action, updated to reflect data elements for the period from 1989 through the most currently available data;

(2) the firearms licensing system ("FLS") data previously produced by ATF under protective order in the *NAACP* action, updated to reflect data elements for the period from 1989 through the most currently available data; and

(3) all data produced in response to the Subpoena served by plaintiff, Joan Truman Smith, in *Smith v. Bryco Arms*, 02-CV-3029, dated April 15, 2004, and served upon ATF on April 16, 2004.

### 4. *Objections Based on Consolidated Appropriations Act of 2004*

ATF objected to the April 20, 2004 subpoena on the grounds that the subpoenaed documents were immune from disclosure under the Consolidated Appropriations Act of 2004

("the 2004 Act") and were protected under the law enforcement privilege. Congress enacted the 2004 Act on January 23, 2004. Pub. L. 108-199, 118 Stat. 3 (2004), codified as amended at 28 U.S.C. § 530C. The 2004 Act provided:

> *[N]o funds appropriated under this or any other Act may be used to disclose to the public the contents or any portion thereof of any information required to be kept by licensees* pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) or section 923(g) of title 18, United States Code, except that this provision shall apply to any request for information made by any person or entity after January 1, 1998[.]

118 Stat. at 53 (emphasis added).

ATF argued that the 2004 Act prohibited the disclosure to plaintiffs of any trace data, multiple sales records, or other federal firearms licensing information required to be kept pursuant to section 923(g). *See City of New York v. Beretta U.S.A. Corp.*, 222 F.R.D. 51, 54 (E.D.N.Y. 2004). Defendants supported ATF's contentions, but argued, in the alternative, that if the court ordered any production of ATF data, the defendants would be entitled to "full access to and an unfettered right to use" such data. *See id.* (citation omitted). Plaintiff contended that the ATF data were necessary in order to prove its case against the defendants. *See id.*

The Magistrate Judge held that the 2004 Act did not bar the disclosure of the information at issue:

> [T]he 2004 Act does not . . . prohibit disclosure of the information. Instead, the 2004 Act prohibits the use, by the [ATF], of appropriated funds in making the disclosure of information to the public.

*Id.* at 59. The opinion of the Magistrate Judge was affirmed. *See City of New York v. Beretta*, 222 F.R.D. 48 (E.D.N.Y. 2004). The United States Court of Appeals for the Second Circuit

6

denied ATF's petition for a writ of mandamus seeking to overturn the district court decision. *In re Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 04-3738-op (2d Cir. Aug. 24, 2004).

### 5. *Magistrate Judge's May 19, 2004 Order*

In granting the City's request for discovery, the Magistrate Judge, by order dated May 19, 2004, described its scope as follows: "The City and the defendants . . . seek that data which was previously produced in *NAACP*, updated through December 31, 2003." 222 F.R.D. at 67.

### 6. *ATF Production*

In mid-October of 2004, less than a month before the effective date of the 2005 Act, ATF produced to the City data included in the data fields specified in Exhibit A to the *City* Order of Protection. At that time, ATF also produced, outside the Order of Protection, a disk of nonconfidential information.

### 7. *2005 Act*

The Consolidated Appropriations Act of 2005 provides in relevant part: "all . . . data shall be immune from legal process and shall not be subject to subpoena or discovery . . . ." P.L. 108-447, 118 Stat. 2809, 2859 (2004). The Act was effective on December 8, 2004.

### 8. *City's Motion to Compel*

By letter to the Magistrate Judge dated February 15, 2005, the City moved for an order to compel ATF to produce additional data, arguing that ATF improperly failed to produce three types of data that, according to the City, were demanded in the subpoena: (1) trace data for open cases that were not specified in the *City* Order of Protection; (2) purchaser information; and (3) trace data decode tables, *i.e.* tables that interpret codes for manufacturers, crimes and case completion information that appear in the trace data.

7

In response to the motion to compel, ATF took the position that none of the material sought by the City could be produced. It contended that the information requested did not fall under the terms of the City's subpoena or Order of Protection. It also argued that the 2005 Act rendered the data not yet supplied immune from disclosure.

9. *Magistrate Judge's February 22, 2005 Order*

At a conference held on February 22, 2005, the Magistrate Judge rejected ATF's contention. She held:

> What I ordered was the NAACP files updated to . . . 2003.
> It falls under the old subpoena. It is not subject to the 2005
> Appropriations Act. . . . I actually thought what was going to
> happen was the disk that was given to [counsel for plaintiff] back
> in the NAACP case was going to be given to everybody with a new
> disk adding the additional new updated information. . . . I will give
> you time to produce it, but you need to get that to them. . . .
> [e]xactly the same material that was provided to the NAACP. . . .
> This is [a] subpoena you were ordered to provide responses to prior
> to that act going into effect. And I don't think that that act
> retroactively relieves of a responsibility that I ordered you to
> respond to before the act was dealt with. . . .
> I think my order was pretty clear. The mandate that I thought was
> going to be followed was issued long before the act. And I don't
> think the act prohibits you from now complying with that
> subpoena.

Feb. 22, 2005 Order at 33-34.

10. *District Court's April 1, 2005 Affirmance*

On April 1, 2005, the district court affirmed the February 22, 2005 decision of the Magistrate Judge, holding that the 2005 Act did not relieve ATF of its duty to comply with the Magistrate Judge's order of February 22, 2005, which enforced her prior order. *City of New York v. Beretta U.S.A. Corp.*, 00-CV-3641, 2005 WL 741794, at *13 (E.D.N.Y. Apr. 1, 2005).

III. Law

A. Local Civil Rule 6.3

Motions for reconsideration are governed by Rule 6.3 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York. It provides:

> A notice of motion for reconsideration . . . shall be served within ten (10) days after the docketing of the court's determination of the original motion. There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court overlooked . . . .

Local Civ. R. 6.3. "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

It can be argued that ATF's position has essentially shifted so that reargument is inappropriate because the new position should have been urged earlier. *See, e.g., Melnitzky v. Rose*, 305 F. Supp. 2d 349, 350 (S.D.N.Y. 2004); *Arum v. Miller*, 304 F. Supp. 2d 344, 347 (E.D.N.Y. 2003); *E.E.O.C. v. Fed. Express Corp.*, 268 F. Supp. 2d 192, 195 (E.D.N.Y. 2003). Since the issues require interpretation of an Act of Congress with possible constitutional implications, application of Local Rule 6.3 to foreclose any ATF argument is inappropriate.

B. Caselaw Relied on by ATF

A number of cases, described below, are relied upon to support ATF's position that the 2005 Act applies to the Magistrate Judge's order of February 22, 2005, which required compliance with her prior order of May 19, 2004. ATF argues that the 2005 Act prevents either

order from having any force after the 2005 Act's effective date, December 8, 2004.

In *Miller v. French*, 530 U.S. 327 (2000), the United States Supreme Court addressed the mandatory stay provision of the Prison Litigation Reform Act (PLRA). Prison inmates at Indiana's Pendleton Correctional Facility had prosecuted a class action lawsuit regarding the allegedly unconstitutional conditions of their confinement. The district court issued an injunction to remedy Eighth Amendment violations in conditions of confinement. Congress subsequently enacted the PLRA, which set a standard for the entry and termination of prospective relief in civil actions challenging prison conditions. Specifically, section 3626(b)(2) of Title 18 of the United States Code provided that a defendant or intervenor could move to terminate prospective relief under an existing injunction that did not meet the PLRA standard. Section 3626(b)(3) provided that a court could not terminate such relief if it made certain findings, while section 3626(e)(2) dictated that a motion to terminate such relief "[would] operate as a stay" of that relief beginning 30 days after the motion was filed. *Id.* at 331.

In 1997, pursuant to section 3626(b), prison officials filed a motion to terminate a pre-PLRA remedial order by the district court. Prisoners moved to enjoin the operation of the automatic stay, arguing that section 3626(e)(2) violated due process and separation of powers. The district court enjoined the stay, and the prison officials appealed. In affirming, the United States Court of Appeals for the Seventh Circuit concluded that section 3626(e)(2) precluded courts from exercising their equitable powers to enjoin such stays, but that the statute, so construed, was unconstitutional on separation of powers grounds.

The Supreme Court affirmed the Seventh Circuit's holding that section 3626(e)(2) precluded courts from exercising their equitable powers to enjoin the stay, but reversed its

10

determination that the statute was unconstitutional on separation of powers grounds. While agreeing that "this construction raises constitutional questions," the Supreme Court concluded that "the canon of constitutional doubt permits us to avoid such questions only where the saving construction is not 'plainly contrary to the intent of Congress.'" *Id.* at 341 (citation omitted).

The issue in *Miller* was whether section 3626(e)(2) encroached on the central prerogatives of the judiciary and thereby violated the separation of powers doctrine. The prisoners asserted that the statute required the legislative suspension of a final judgment of an Article III court. *Id.* at 342. According to the prisoners, the remedial order governing living conditions at the Pendleton Correctional Facility was a final judgment of an Article III court, and section 3626(e)(2) constituted an impermissible usurpation of judicial power because it commanded the district court to suspend prospective relief under that order, albeit temporarily. The Court rejected the contention that this suspension violated separation of powers principles.

*Miller* is not relevant to ATF's motion for reconsideration. It is a separation of powers case, not a retroactivity case. In *Miller*, there was no question that the statutory language at issue applied to pending cases. 530 U.S. at 334 n.* ("The 1997 amendments to the PLRA revised the automatic stay provision to its current form, and Congress specified that the 1997 amendments 'shall apply to pending cases.'") (citing 18 U.S.C. § 1325 note (1994 ed., Supp. IV)). The language of the statute, furthermore, indicated that it was authorizing the termination of prospective relief. *See id.* at 333 ("In any civil action with respect to prison conditions, a defendant or intervener shall be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence of a [particular finding]."). The Court observed that "[p]rospective relief under a *continuing*, executory decree remains subject to alteration due

11

to changes in the underlying law," citing *Landgraf*. *Id.* at 344 (emphasis added).

ATF's original Rule 72 motion characterized *Miller* as standing for the proposition that "giving retroactive effect to the 2005 Act in this case would not constitute an improper encroachment by Congress on the power of the courts." Rule 72 Motion at 15. Its current citation of *Miller* for the proposition that the 2005 Act is not retroactive at all, as applied to the Magistrate Judge's prior discovery order, is not persuasive. *Miller* does serve as a reminder that Congress, aware of the interpretive presumption against retroactivity, may include language explicitly applying new provisions to pending cases.

In *Cobell v. Norton*, 392 F.3d 461 (D.C. Cir. 2004), members of Indian tribes and present or past beneficiaries of individual Indian money (IIM) accounts filed a class action, alleging that Secretaries of the Interior and the Treasury, and the Assistant Secretary of the Interior for Indian Affairs had grossly mismanaged those accounts. The district court had issued an injunction ordering a complete historical accounting of trust fund assets. Government defendants appealed.

Plaintiff's suit in *Cobell* drew significantly on congressional findings of poor management of the IIM accounts and its actions to remedy the resulting problems. A 1992 congressional report had catalogued the Interior's "dismal history of inaction and incompetence" and concluded that the agency had "repeatedly failed to take resolute corrective action to reform its longstanding financial management problems." *Id.* at 464 (citation omitted). In 1994 Congress moved from findings to legislation, passing the Indian Trust Fund Management Reform Act. The 1994 Act imposed a variety of duties on the Secretary of the Interior, most of them relating to trust funds such as the IIM accounts.

After long and complex litigation, on September 25, 2003, the district court issued an

12

injunction requiring an "historical accounting" intended to "unravel the tangle resulting from past accounting failures." 392 F.3d at 464.

The Court of Appeals concluded that the 2003 injunction was governed by a subsequent statute, adopted less than two months after the issuance of the injunction, which changed the underlying substantive law and removed the legal basis for the historical accounting elements of the injunction. It therefore vacated those elements. The statute stated in relevant part:

> [N]othing in the American Indian Trust Management Reform Act of 1994 . . . *shall be construed* or applied to require the Department of the Interior to commence *or continue* historical accounting activities with respect to the Individual Indian Money Trust until the earlier of the following shall have occurred: (a) Congress shall have amended the American Indian Trust Management Reform Act of 1994 to delineate the specific historical accounting obligations of the Department of the Interior with respect to the Individual Indian Money Trust; or (b) December 31, 2004.

392 F.3d at 465 (citation omitted) (emphasis added).

*Cobell*, like *Miller*, is a separation of powers case. In responding to the plaintiffs' claim that the decision amounted to a "legislative stay" of a final judgment, the Court distinguished the Supreme Court cases cited by noting: "But the Court also said that an appellate court must apply any law enacted after the judgment under review and *clearly intended* to have retroactive effect." *Id.* at 467 (emphasis added). In *Cobell*, like *Miller*, there was never a question that the statute was meant to have retroactive effect. The terms of the statute indicated that it was not only prohibiting future historical accounting activities, but that it was clarifying the 1994 Act so as to prohibit the continuation of pending historical accounting activities.

Given that there was no retroactivity question in the case, the *Cobell* court addressed the question of separation of powers. 392 F.3d at 468 ("Finding neither an effort to mandate a

13

particular interpretation of the substantive law nor an impermissible legislative modification of a final judgment, we reject plaintiffs' separation of powers theories."). As in *Miller*, the court in *Cobell* emphasized that for separation of powers purposes, statutes may "alter the substantive obligations of parties subject to *ongoing* duties under an injunction." *Id.* at 467 (emphasis added). The *Cobell* court never reached the question of whether the legislature could undermine the settled expectations of parties to litigation by invalidating a discrete prior discovery order which should have been abided by before the effective date of the statute at issue.

In *Havana Club Holding v. Galleon S.A.*, 203 F.3d 116, 128 (2d Cir. 2000), a Cuban rum producer sued an American seller alleging trademark infringement and false designation of origin. The court found that an act passed before a bench trial was completed applied to the case. The United States Court of Appeals for the Second Circuit noted that Congress may amend substantive law in an appropriations statute so long as it does so clearly. In addressing the retroactivity question, the court reasoned:

> To determine whether section 211(b) may apply retroactively, we would normally first inquire "whether Congress has expressly prescribed the statute's proper reach." *Landgraf v. USI Film Products*, 511 U.S. 244, 280, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994). Since section 211 does not clearly indicate that it should be applied retroactively, the traditional presumption against retroactivity would likely apply. *See id.*
> In this case, however, we can apply section 211(b) to bar relief on HCI's trade name claim because when an "intervening statute authorizes or affects the propriety of *prospective relief*, application of the new provision is not retroactive." Because [the party] seeks only injunctive relief, this Court can properly apply section 211(b).

203 F.3d at 128-29 (emphasis in original).

*Havana* relies on the "prospective relief" exception in *Landgraf* which ATF is now

14

actively pressing. The intervening statute prohibited injunctive relief that a party sought for the first time after the effective date of the statute. *Id.* at 126 n.9 ("Although a statute could be prospectively applied to bar an injunctive remedy with respect to a previously acquired property, it would arguably encounter retroactivity objections if applied, of its own force, to invalidate a prior acquisition."). By contrast, in the instant case the intervening statute is said by ATF to invalidate a prior discovery order that should have been carried out before the effective date of the 2005 Act.

In *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489 (2d Cir. 2000), the owner of an internet domain name, "sportys.com," brought an action against a catalog company that held the "sporty's" trademark, seeking a declaration that the owner had a right to use its domain name. The district court had issued an injunction directing the owner of the "sportys.com" domain name to transfer the name to the defendant, and permanently enjoined the plaintiff from taking any action to prevent or hinder the transfer. While the appeal in the case was pending, Congress amended the Trademark Act of 1946, creating a specific federal remedy for "cyber-squatting." The United States Court of Appeals for the Second Circuit found that the new statute applied, but that it did not entitle the defendant to damages. The terms of the statute made clear that it would apply to the pending case:

> The Act [provided] that "a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark," 15 U.S.C. § 1125(d)(1)(C), if the domain name was "registered *before*, on, or after the date of the enactment of this Act," Pub. L. No. 106-113, § 3010. It also provides that damages can be awarded for violations of the Act, but that they are *not* "*available* with respect to the registration, trafficking, or use of a domain name that occurs before the date of the enactment of this Act."

15

202 F.3d at 496 (emphasis added). The plaintiff in *Sporty's* argued that the injunction of the district court under prior existing law was impermissibly retroactive, as was the affirmance of that injunction under the new statute. The Court of Appeals rejected the argument. *Id.* at 502 ("[T]he injunction that was issued in this case provided only prospective relief . . . . Since it did no more than avoid [a] continuing harm . . . there is no retroactivity problem."). The Court of Appeals in *Sporty's* affirmed the prior district court order by applying a statute that made its application to the dispute clear on its face. In the instant case, ATF seeks to invalidate a prior order by the application of a statute that contains no express retroactivity provision.

In *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293 (2d Cir. 1998), disabled Section 8 certificate holders brought an action against owners and managers of an apartment complex alleging that refusal to rent to certificate holders violated the United States Housing Act's "take one, take all" provision. The district court had determined on a motion for summary judgment that the provision was inapplicable to the case because the only Section 8 tenants housed by the landlord were tenants who, having experienced reversals of fortune, had enrolled in the Section 8 program during their tenancy, and whom the owners had decided not to evict.

Soon after the district court issued its opinion, but prior to the briefing of the appeal, Congress repealed the "take one, take all" provision. The plaintiffs nevertheless appealed the district court's rulings, and the Court of Appeals for the Second Circuit affirmed.

It held that because Congress had repealed the "take one, take all" provision, plaintiffs could not subsequently obtain injunctive relief pursuant to the repealed provision. The court based its decision on *Landgraf*'s language: "When an intervening repeal of a statute affects the propriety of prospective relief, a court should apply the law in effect at the time it renders its

16

decision." *Id.* at 299 n.2 (citing *Landgraf*, 511 U.S. at 273-74). It relied on another Supreme Court case, *American Steel Foundries v. Tri-City Central Trades Council*, 257 U.S. 184, 201 (1921), for the proposition that a statute enacted during an appeal governs the propriety of injunctive relief because "relief by injunction operates *in futuro*." 136 F.3d at 299 n.2.

*Salute* is relevant only to the extent that the discovery orders in the present case can be considered prospective, operating exclusively *in futuro*. The Magistrate Judge's interpretation of her own order was that the materials ordered discovered did not require ongoing *in futuro* action, but rather the discrete act of forthwith – *i.e.*, before the effective date of the 2005 Act – turning over information which had been turned over in prior litigation.

District courts and magistrate judges have ongoing power to enforce a prior order requiring the disclosure of information by interpreting the order and by making modifications necessary to carry out its essential terms. *See, e.g., Benjamin v. Jacobson*, 172 F.3d 144, 157 (2d Cir. 1999) (en banc) ("[I]t is well established that a federal court ordinarily has the power to enforce its own orders and judgments."). A valid order cannot be frustrated by reiterated challenges and misinterpretations without destroying the court's jurisdictional power to ensure that its decisions are expeditiously followed and respected by the parties.

C. ATF's Current Retroactivity Analysis

ATF's motion for reconsideration significantly shifts its argument from retroactivity to prospectivity. It now relies on the following language from *Landgraf*:

> Even absent specific legislative authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations. *When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive.*

17

511 U.S. 244, 273 (1994) (emphasis added). This revised view is not helpful in the present

controversy. In its motion for reconsideration, ATF paints *Landgraf* as a rather simplistic

opinion:

> *Landgraf v. USI Film Products Inc.*, 511 U.S. 244, 264
> (1994), is the seminal case involving retroactivity. In that case, the
> Supreme Court noted *the well-settled principle* . . . that a court is to
> apply the law in effect at the time the court rules. *Id.* at 264.

Motion for Reconsideration at 12 (emphasis added). The "well-settled principle" mentioned in

*Landgraf* is discussed in a paragraph that explains the complexity of the present statutory

problem:

> It is not uncommon to find "apparent tension" between different
> canons of statutory interpretation. As Professor Llewellyn
> famously illustrated, many of the traditional canons have equal
> opposites. In order to resolve the question left open by the
> [legislation at issue in the instant case], federal courts have labored
> to reconcile two seemingly contradictory statements found in our
> decisions concerning the effect of intervening changes in the law.
> Each statement is framed as a generally applicable rule for
> interpreting statutes that do not specify their temporal reach. The
> first is the rule that "a court is to apply the law in effect at the time
> it renders its decision." The second is the axiom that
> "[r]etroactivity is not favored in the law," and its interpretive
> corollary that "congressional enactments and administrative rules
> will not be construed to have retroactive effect unless their
> language requires this result."

511 U.S. at 263-64. The Court in *Landgraf* went on to state that "[w]e have previously noted the

'apparent tension' between those expressions." *Id.* at 264.

Retroactivity determinations are often close, and the standard set forth in *Landgraf* by its

own terms is not to be woodenly applied:

> Any test of retroactivity will leave room for disagreement in hard
> cases, and is unlikely to classify the enormous variety of legal

> changes with perfect philosophical clarity. However, retroactivity
> is a matter on which judges tend to have "sound . . . instincts," and
> familiar considerations of fair notice, reasonable reliance, and
> settled expectations offer sound guidance.

511 U.S. at 270. As reframed in ATF's motion for reconsideration, the question is ultimately

whether the statute impinges on "vested rights and past transactions," 511 U.S. at 268-69, or

whether it merely "authorizes or affects the propriety of prospective relief." *Id.* at 273. The

decision must be made bearing in mind that "a justification sufficient to validate a statute's

prospective application under the [Due Process Clause] 'may not suffice' to warrant its

retroactive application." *Id.* at 266 (citation omitted). While a statute may serve a legitimate and

important purpose – such as the protection of law enforcement records – that purpose alone does

not justify its retroactive application.

D. Federalism

The substantive law governing this diversity case is New York State law. Under *Erie*

*R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), as a constitutional matter, federal courts have a duty to

fairly enforce that law. *See* RICHARD H. FALLON, JR., DANIEL J. MELTZER & DAVID L. SHAPIRO,

HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 644-73 (5th ed. 2003)

(enforcing state-created rights). Federal courts will apply their own procedure and evidentiary

rules in adjudicating state substantive law litigations. In general, that procedural law will be

transubstantive – *i.e.*, it will treat state substantive issues in the same way as federal substantive

issues. Myriad limits on use of information acquired as part of federal policies may impact state

substantive law litigation in state as well as federal courts. *See, e.g.*, Office of Management and

Budget, Guidelines for Ensuring and Maximizing the Quality, Objectivity, Utility, and Integrity

of Information Disseminated by Federal Agencies; Republication, 67 Fed. Reg. 8452 (Feb. 22, 2002); Disposal of Consumer Report Information, SEC Release Nos. 34-50781, IA-2332, IC-26685, 69 Fed. Reg. 71322 (Dec. 8, 2004) (to be codified at 17 C.F.R. pt. 248); Alan B. Morrison, *Protective Orders, Plaintiffs, Defendants and the Public Interest in Disclosure; Where Does the Balance Lie*, 24 U. RICH. L. REV. 109 (1989).

There are constitutional limits based on our theory of federalism and the balance between state and federal jurisdiction that restrict the extent to which federal statutes can impinge on state regulatory power and substantive law. *See, e.g.*, *United States v. Morrison*, 529 U.S. 598 (2000); *City of Boerne v. Flores*, 521 U.S. 507 (1997); *United States v. Lopez*, 514 U.S. 549 (1995); KATHLEEN M. SULLIVAN & GERALD GUNTHER, CONSTITUTIONAL LAW 179-215 (15th ed. 2004) (discussing state autonomy limits on Congressional power); ERWIN CHEMERINSKY, CONSTITUTIONAL LAW, 2004 SUPPLEMENT 59 (2004) (same); ERWIN CHEMERINSKY, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES 314-18 (2d ed. 2002) (same).

Undoubtedly the federal government has power to regulate guns and to exercise some control over information acquired in the course of that regulation. But the states also have power to regulate the sale and use of guns, at least indirectly, in connection with their tort and nuisance laws as well as by police licensing laws. Should the federal legislature use its power in particular cases or types of cases to tip the state substantive scales in favor of one party or set of parties, it may intrude on *Erie* and other federalism balances. The decision by the Magistrate Judge and the district court in the present matter avoids that constitutional issue.

In view of the decision reached there is no need to consider separation of powers constitutional issues.

## IV. Application of Law to Facts

The original May 19, 2004 discovery order was a discrete determination that ought to have been complied with before the effective date of the 2005 Act, rather than a wide-ranging injunction operating *in futuro*. Given the facts of this case, it would be unfair to apply the 2005 Act retroactively to cancel the Magistrate Judge's orders.

The only prospective effect of the orders of the Magistrate Judge arises from ATF's failure to fully comply with them. Had ATF done what it was ordered to do when it was ordered to do it – *i.e.*, produce the same data in the instant case as that supplied in the *NAACP* action, updated through year end 2003 – there could be no dispute as to prospective effect. To apply the 2005 Act in this situation would permit ATF to benefit from its failure to comply with this court's orders. More importantly it would both flout the Magistrate Judge's attempt to control discovery and disadvantage all parties.

## V. Conclusion

ATF has not brought to the attention of the court any factual matter or controlling precedent that affects the validity of the decision of April 1, 2005, affirming the discovery orders of the Magistrate Judge. The motion for reconsideration is granted. This court's order of April 1, 2005 is reaffirmed. The order of the Magistrate Judge is stayed until May 3, 2005 at 5:00 p.m., to permit an application for a further stay to the United States Court of Appeals for the Second Circuit.

SO ORDERED.

s/Jack B. Weinstein
Jack B. Weinstein

21

Dated: April 27, 2005
        Brooklyn, New York