UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

THE CITY OF NEW YORK,

        Plaintiff,

v.

BERETTA U.S.A. CORP., et al.,

        Defendants.

---

No. 00-CV-3641 (JBW)

MEMORANDUM & ORDER
ON DISTRICT COURT JURISDICTION
PENDING APPEAL

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
MAR 0   2006
BROOKLYN OFFICE

Appearances:

For Plaintiff City of New York:

    Corporation Counsel of the City of New York
    New York, New York
    By:    Melanie Ash
           Richard J. Costa
           Eric Proshansky
           Gail P. Rubin

    Brady Center to Prevent Gun Violence
    Legal Action Project
    Washington, D.C.
    By:    Jonathan E. Lowy
           Elizabeth Schickedanz Haile
           Brian J. Siebel
           Dennis A. Henigan

    Center for Constitutional Litigation
    Washington, D.C.
    By:    Robert S. Peck

    Thelen Reid & Priest, LLP
    New York, New York
    By:    Michel S. Elkin
           Gabriel Mark Nugent

1



For Defendant Beretta U.S.A. Corp.:

    Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC
    Baltimore, Maryland
    By:    Lawrence S. Greenwald

For Defendant Browning Arms Co.:

    Friday, Eldredge & Clark, LLP
    Little Rock, Arkansas
    By:    Jonann E. Chiles
           Jamie Huffman Jones

    Renzulli, Pisciotti & Renzulli, LLP
    New York, New York
    By:    John F. Renzulli
           Leonard S. Rosenbaum
           Scott Charles Allan

For Defendant Colt's Manufacturing Co., Inc.:

    Jones Day
    Dallas, Texas
    By:    Thomas E. Fennell
           Mark R. Hall
           Joseph Anthony Strazzeri
           Kelly J. Hunt
           Patrick Carew
           Paula Reichenstein
           Michael L. Rice
           Patrick G. Broderick

    Pino & Associates, LLP
    White Plains, New York
    By:    Thomas E. Healy

For Defendants Forjas Taurus, S.A. and Taurus International Manufacturing, Inc.:

    Budd Larner, P.C.
    Atlanta, Georgia
    By:    Bridgette E. Eckerson
           Budd Larner
           Prescott L. Nottingham

        Timothy A. Bumann
        Jennifer C. Kane
        Kathleen C. Marchetti
        J. Clayton Cheshire

For Defendant Glock, Inc.:

    Renzulli, Pisciotti & Renzulli, LLP
    New York, New York
    By:    Christopher Renzulli
        John F. Renzulli
        Scott C. Allan

For Defendant Phoenix Arms:

    Tarics & Carrington, PC
    Houston, Texas
    By:    Michael J. Zomcik

For Defendant Sigarms, Inc.:

    Wilson, Elser, Moskowitz, Edelman & Dicker
    New York, New York
    By:    Robert Laurent Joyce

For Defendant Smith & Wesson Corp.:

    Greenberg Traurig, LLP
    New York, New York
    By:    Alan Mansfield

    Pietragallo, Bosick & Gordon
    Pittsburgh, Pennsylvania
    By:    Clem C. Trischler
        Robert R. Leight

    Shook Hardy & Bacon, LLP
    Kansas City, Missouri
    By:    Stacey Elaine Deere
        Jeffrey Scott Nelson
        Tina Marie Schaefer

For Defendant Sturm, Ruger & Co., Inc.:

    Wildman, Harrold, Allen & Dixon, LLP
    Chicago, Illinois
    By:    James P. Dorr
           Sarah Liddell Olson

    Gallagher Gosseen Faller Kaplan & Crowle
    Garden City, New York
    By:    William Edward Vita

For Defendants AcuSport Corp.; Alamo Leather Goods, Inc.; Bangers, L.P.; Bill Hicks & Co.; Brazas Sporting Arms, Inc.; Camfour Inc.; Chattanooga Shooting Supplies, Inc.; Davidson's Supply Co., Inc.; Dixie Shooters Supply, Inc.; Ellet Brothers, Inc.; Euclid Ave. Sales Co.; Faber Brothers, Inc.; Glen Zanders Fur and Sporting Goods Co.; Hicks, Inc.; Kiesler Police Supply, Inc.; Lew Horton Distributing Co.; Lipsey's Inc.; MKS Supply Co.; Riley's, Inc.; RSR Group, Inc.; Ron Shirk's Shooter's Supplies, Inc.; Southern Ohio Gun, Inc.; Sports South, Inc.; Valor Corp.; Walter Craig, Inc.; Williams Shooter's Supplies:

    The Chiafullo White Group, LLP
    Watchung, New Jersey
    By:    Christopher M. Chiafullo

For Bureau of Alcohol, Tobacco, Firearms and Explosives:

    Bureau of Alcohol, Tobacco, Firearms and Explosives
    Office of Chief Counsel
    Washington, D.C.
    By:    Barry Orlow, Esq.

For United States:

    United States Attorney's Office
    Eastern District of New York
    Brooklyn, New York
    By:    Elliot M. Schachner

JACK B. WEINSTEIN, Senior District Judge:

The City of New York ("City") sues the main suppliers of handguns in the United States ("defendants") seeking injunctive relief and abatement of an alleged public nuisance caused by

the gun industry's negligent and reckless merchandising. Defendants challenge this court's jurisdiction over proceedings in this litigation during their attempted appeal of the court's December 2, 2005 interlocutory order denying their motion for summary judgment.

I.  **Facts**

The City filed suit against defendants in 2000. After extensive discovery and pretrial motion practice, trial was scheduled to begin on November 28, 2005. *See* Docket Entries to 1021. Prior decisions had demonstrated a factual basis for the City's suit. *See N.A.A.C.P. v. Acusport*, 271 F. Supp. 2d 435 (E.D.N.Y. 2003) (findings of fact and law); *City of New York v. Beretta*, 315 F. Supp. 2d 256 (E.D.N.Y. 2004) (denying motion to dismiss).

On October 26, 2005 the President of the United States approved the Protection of Lawful Commerce in Arms Act, Pub. L. No. 109-92, 109 Stat. 2005 ("PLCAA"). The PLCAA, which was immediately effective, requires that a "qualified civil liability action that is pending on the date of enactment . . . shall be immediately dismissed." PLCAA § 3(b). The stated purpose is to promptly terminate existing, and prevent future, "qualified civil liability actions," as defined by the Act. Hours after the PLCAA was signed, defendants moved for a permanent stay and for dismissal.

The motion for dismissal was denied on December 2, 2005 on the grounds that the PLCAA did not apply to this litigation. *See City of New York v. Beretta U.S.A. Corp.*, 401 F. Supp. 2d 244, 298 (E.D.N.Y. 2005) (denying defendants' motion for summary judgment). The question of applicability of the PLCAA was certified for interlocutory appeal by this court, which also granted a temporary discretionary stay. *See* 28 U.S.C. § 1292(b).

5

Defendants filed a petition in the Court of Appeals for the Second Circuit requesting that that court accept the question certified, and a second notice of appeal "pursuant to the collateral order doctrine." *See* Not. of App., CCA Case No. 05-6942. The City filed cross-petitions to protect its appellate rights should the Court of Appeals allow an appeal to proceed. *See* Pl.'s Br. 3-4. The Court of Appeals has docketed the notices of appeal and cross-appeal based upon the collateral order doctrine, but has not yet issued an order on the petition and cross-petition based on the Section 1292(b) certification.

Prior to the issuance of this court's December order denying the defendants' motion to dismiss, *City of New York v. Beretta U.S.A. Corp.*, 401 F. Supp. 2d 244 (E.D.N.Y. 2005), there was adopted in November 2005 as part of the 2006 appropriations bill a provision limiting the use of ATF trace data in certain civil litigations. *See* Science, State, Justice, Commerce, and Related Agencies Appropriations Act of 2006, Pub. L. No. 109-108, 119 Stat. 2290 ("the 2006 rider"). The parties had not brought this statute to the court's attention before it issued its December order.

Amending provisions of prior appropriations acts, the 2006 rider purported to limit the evidence a court could consider in civil litigation. Adding the material in italics, it now states:

> [N]o funds appropriated under this or any other Act with respect to any fiscal year may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section 923(g), to anyone other than a Federal, State, or local law enforcement agency or a prosecutor solely in connection with and for use in a bona fide criminal investigation or prosecution and then only such information as pertains to the geographic

6

> jurisdiction of the law enforcement agency requesting the disclosure and not for use in any civil action or proceeding other than an action or proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives, or a review of such an action or proceeding, to enforce the provisions of chapter 44 of such title, and all such data shall be immune from legal process and shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, *and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based upon such data, in any civil action pending on or filed after the effective date of this Act in any State (including the District of Columbia) or Federal court* or in any administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives to enforce the provisions of that chapter, or a review of such an action or proceeding; except that this proviso shall not be construed to prevent the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(a)(10) of such title) . . .

Pub. L. No. 109-108 (emphasis supplied).

On February 8, 2006, the court issued an order directing the parties to show cause why the City's suit should not be dismissed on the basis of the 2006 rider, which could be read as excluding from evidence the ATF trace data central to the City's case, which had already been revealed in ongoing discovery preparatory to trial. *See* Mem. & Order of Feb. 8, 2006. The discretionary stay was withdrawn to permit a response to the order to show cause. *Id.* at 3.

Defendants now challenge this court's jurisdiction to address the effect of the 2006 rider or to conduct any other proceedings pending decision on their appeals by the Court of Appeals for the Second Circuit.

## II.   Interlocutory Appeal

At the outset it should be emphasized that an appeal from an interlocutory order, not from a final judgment, is involved. As a general rule, an appeal may be taken only from "final decisions of the district courts," 28 U.S.C. § 1291, to avoid (1) delay of the trial court's work in dealing with the merits of the case, and (2) the burdens on the litigants and appellate court of repeated appeals.

"[T]he filing of a notice of appeal [from a final judgment] is jurisdictionally significant; it terminates the district court's consideration and control over those aspects of the case that are on appeal." *New York State NOW v. Terry*, 886 F.2d 1339, 1349 (2d Cir. 1989). Interlocutory appeals—allowed as a very limited exception to the final judgment rule—do not terminate the district court's jurisdiction over the case as a whole. Rather, the litigation is expected to proceed to final judgment in the trial court except in particular circumstances where a stay is desirable. *Id.* at 1350 (when there is an interlocutory appeal, "the matter does not leave the district court, but proceeds there on the merits, unless otherwise ordered").

Interlocutory appeals are permitted in only a few instances. *See, e.g.*, 28 U.S.C. § 1291(a)(1) (injunctions). Two are now of concern: one provided by statute under section 1292(b) of Title 28 of the United States Code, and another created by courts themselves under the rubric of the collateral order doctrine.

Section 1292 of Title 28 of the United States Code permits federal district courts to certify controlling issues of law for immediate appeal. It provides:

> (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the

8

> ultimate termination of the litigation, he shall so state in writing in
> such order. The Court of Appeals which would have jurisdiction of
> an appeal of such action may thereupon, in its discretion, permit an
> appeal to be taken from such order, if application is made to it
> within ten days after the entry of the order: *Provided, however,*
> That application for an appeal hereunder *shall not stay proceedings
> in the district court unless the district judge or the Court of
> Appeals or a judge thereof shall so order.*

28 U.S.C. § 1292(b) (first emphasis in original) (second emphasis supplied).

Certification by the trial and appellate courts under section 1292 does not divest the district court of jurisdiction over aspects of a suit outside the appeal. *See, e.g., New York State NOW*, 886 F.2d at 1350 ("We have held that the filing of an interlocutory appeal only divests the district court of jurisdiction respecting the questions raised and decided in the order on appeal."); *Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*, 527 F.2d 966, 973 (2d Cir. 1975) ("The filing of a notice of appeal from the December 18, 1974 order only divested the district court of jurisdiction with respect to questions raised and decided in the order appealed from."); *United States v. City of Chicago*, 534 F.2d 708, 711 (7th Cir. 2003) ("An appeal from an interlocutory order does not divest the trial court of jurisdiction to continue deciding other issues involved in the case."). The policy of going forward with litigations without unnecessary delay, *see* Fed. R. Civ. P. 1, is carried out by requiring an explicit stay. *See, e.g., Ex Parte Nat'l Enameling & Stamping Co.*, 201 U.S. 156, 162, 26 S. Ct. 404 (1906) ("The case, except for the hearing on the appeal from the interlocutory order, is to proceed in the lower court as though no appeal had been taken, unless otherwise specially ordered."); *New York State NOW*, 886 F.2d at 1350 (in the case of an interlocutory appeal, "the matter does not leave the district court, but proceeds there on the merits, unless otherwise ordered").

Defendants cite no authority for their assertion that this court lacks jurisdiction to proceed after its section 1292 certification of an interlocutory appeal. Absent an order of the trial court or the court of appeals staying proceedings, the district court has continuing authority to proceed with the litigation. 28 U.S.C. § 1292(b). *See also Ex Parte Nat'l Enameling & Stamping Co.*, 201 U.S. at 162; *New York State NOW*, 886 F.2d at 1350. No stay has issued from the Court of Appeals for the Second Circuit; this court has lifted its temporary stay. The action may proceed in this court while the Second Circuit considers the interlocutory appeal.

### III. Collateral Order Doctrine

#### A. District Court Jurisdiction Under the Collateral Order Doctrine

The collateral order doctrine, a "practical construction" of the final judgment rule, permits interlocutory appeals of "only those district court decisions that are conclusive, that resolve important questions completely separate from the merits, and that would render such important questions effectively unreviewable on appeal from final judgment in the underlying action." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867, 114 S. Ct. 1992 (1994) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S. Ct. 1221 (1949)). The doctrine "accommodates a small class of rulings, not concluding the litigation, but conclusively resolving claims of right separable from, and collateral to, rights asserted in the action." *Will v. Hallock*, — U.S. —, 126 S. Ct. 952, 957 (2006) (internal quotations omitted).

Precisely because the issues raised in such appeals are separate from the merits of the underlying litigation, appeals under the collateral order doctrine do not generally divest the district court of jurisdiction over issues not under consideration in the appeal. One of the

10

rationales for the collateral order doctrine "is precisely that an appeal of a collateral order does not disrupt the litigation in the district court." *Apostol v. Gallion*, 870 F.2d 1335, 1338 (7th Cir. 1989) (citing *Stack v. Boyle*, 342 U.S. 1, 12, 72 S. Ct. 1 (1951) (Jackson, J., concurring)). *See also Palmer v. City of Chicago*, 806 F.2d 1316, 1319 (7th Cir. 1986) ("an order is collateral if an appeal would not interfere with the litigation in the district court"); 15A Charles Alan Wright & Arthur A. Miller, Federal Practice and Procedure § 3911.2 (2d ed 1992) (updated by 2005 supplement) ("a central test for determining whether an order is 'collateral' is whether trial court proceedings can continue without interference while an appeal from the order remains pending").

For a limited but significant group of orders appealable under the collateral order doctrine—primarily those dealing with qualified immunity—the question of jurisdiction requires a more sophisticated analysis. In a series of cases beginning with *Abney v. United States*, 431 U.S. 651, 97 S. Ct. 2034 (1977), the Supreme Court established that the collateral order doctrine applied to orders respecting the right not to stand trial. While *Abney* itself involved a criminal defendant's right not to be tried under the Double Jeopardy Clause, later cases expanded the doctrine to cover orders denying absolute or qualified immunity to a government official, *Nixon v. Fitzgerald*, 457 U.S. 731, 742, 102 S. Ct. 2690 (1982) (absolute immunity); *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S. Ct. 2806 (1985) (qualified immunity), and those denying Eleventh Amendment immunity of a state. *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144, 113 S. Ct. 684 (1993).

In these cases, "two important countervailing policies are at work." *United States v. Claiborne*, 727 F.2d 842, 850 (9th Cir. 1984). Because the very right sought to be protected by the early appeal—namely, the right not to be tried—could be lost before the appeal itself is

resolved, the district court should not retain the same authority over the litigation that it generally would during other kinds of interlocutory appeal. Nevertheless, an automatic divestiture rule is not applied. A defendant raising a meritless claim of a right not to stand trial cannot be permitted to significantly delay and disrupt the course of the litigation, imperiling both the rights of the plaintiff and the interest in judicial economy generally served by application of the final judgment rule. *Claiborne*, 727 F.2d at 850; *Apostol*, 870 F.2d at 1338-39 ("During the appeal memories fade, attorneys' meters tick, judges' schedules become chaotic (to the detriment of litigants in other cases). Plaintiffs' entitlements may be lost or undermined. Most deferments will be unnecessary. The majority of [these] appeals—like the bulk of all appeals—end in affirmance. Defendants may seek to stall because they gain from delay at plaintiffs' expense, an incentive yielding unjustified appeals . . . . Proceedings . . . in fact not presenting genuine claims of immunity create still further problems.").

"Mindful of the need to balance these two interests,"—of the need not to burden those who are immune from suit and to prevent stalling of litigation against *bona fide* defendants—the Supreme Court in *Abney* "directed appellate courts to exercise their supervisory powers to establish summary procedures for quickly disposing of frivolous, dilatory pre-trial appeals." *Claiborne*, 727 F.2d at 850 (citing *Abney*, 431 U.S. at 656-57). Following this directive, the Fifth Circuit adopted the "dual jurisdiction rule." *United States v. Dunbar*, 611 F.2d 985, 987-89 (5th Cir. 1980). Under this approach, the filing of an appeal under the collateral order doctrine respecting a right not to be tried divests the district court of jurisdiction to proceed with the trial unless the district court certifies that the appeal is frivolous. *Id.* The dual jurisdiction rule has been uniformly followed by courts in those circuits that have considered it. *See, e.g.*, Palmer v.

*Goss*, No. 02 Civ. 5804, 2003 U.S. Dist. LEXIS 19895, at *3 (S.D.N.Y. Nov. 5, 2003); *Bean v. City of Buffalo*, 822 F. Supp. 1016, 1019 (W.D.N.Y. 1993); *United States v. Leppo*, 634 F.2d 101, 104 (3rd Cir. 1980); *United States v. Head*, 697 F.2d 1200, 1204 n.4 (4th Cir. 1982); *United States v. Lanci*, 669 F.2d 391, 394 (6th Cir. 1982); *United States v. Cannon*, 715 F.2d 1228 (7th Cir. 1983); *United States v. Grabinski*, 674 F.2d 677, 679 (8th Cir. 1982). It has been approved by the Supreme Court. *Behrens v. Pelletier*, 516 U.S. 299, 310, 116 S. Ct. 834 (1996).

While this court will not step into the shoes of the Second Circuit Court of Appeals and decide whether the collateral order doctrine is a basis for the pending interlocutory appeal, it is mandated to decide if it is divested of jurisdiction. If the defendants' appeal is colorable under the collateral order doctrine, this court cannot now address the effect of the 2006 rider or conduct any other proceedings pending decision by the Court of Appeals for the Second Circuit; if it is not, this court retains jurisdiction to decide the effect of the 2006 rider.

### B.  The Scope of the Collateral Order Doctrine

In *Will v. Hallock*, — U.S. —, 126 S. Ct. 952, 958 (2006), the Supreme Court emphasized that it is a "narrow and selective" group of orders that fall within the collateral order doctrine. Orders rejecting absolute and qualified immunity of a government official, Eleventh Amendment immunity of a state, or the double jeopardy of a defendant fall within the circle. *Id.* The interests protected by these defenses—separation of powers, non-disruption of governmental functions, encouragement of public officials to exercise discretion, the State's dignitary interests, restraint of the prosecutorial power of the government—are particularly important. Their value "would be lost through rigorous application of a final judgment requirement." *Id.* at 959.

The *Hallock* Court cautioned against "the lawyer's temptation to generalize." *Id.* at 958. As the instant case demonstrates, a skillful advocate can characterize almost any order denying a claimed right to be free from trial as "conclusive, resolv[ing] important questions completely separate from the merits, and . . . render[ing] such important questions effectively unreviewable on appeal from final judgment." *Digital Equip. Corp.*, 511 U.S. at 867. *See Hallock*, 126 S. Ct. at 958 ("In each case, the collaterally appealing party was . . . claiming a right to avoid trial, in satisfaction of the third condition: unless the order to stand trial was immediately appealable, the right would be effectively lost. Those seeking immediate appeal therefore naturally argue that any order denying a claim of right to prevail without trial satisfies the third condition. But this generalization is too easy to be sound"); *see also* Def.s' Letter of Feb. 10, 2006, at 2 ("The issue before the Second Circuit on appeal is whether the PLCAA protects defendants from having to engage in any further litigation of this action. Accordingly, any and all proceedings in this case are related to the issue on appeal."). Such an expansive construction of the collateral doctrine "would leave the final order requirement of § 1291 in tatters." *Hallock*, 126 S. Ct. at 958.

*Hallock* concerned federal customs officials who raised the judgment bar of the Federal Tort Claims Act in a *Bivens* action. The defendants argued that they should be immune from suit because of that Act, which they asserted barred such suits against them. *Id.* at 959-961. Here, likewise, defendants claim immunity based on a statute—the PLCAA—and analogize it to qualified immunity. But here, as in *Hallock*, the analogy is inapposite. The Supreme Court held in *Hallock* that a statutory bar to litigation did not necessarily constitute the kind of immunity from suit that justifies an interlocutory appeal under the collateral order doctrine. As the Court explained, the collateral order doctrine serves "particular value[s] of a high order . . . not mere

14

avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest . . ." *Id.* at 959. Although "the efficiency of Government [would] be compromised and the officials burdened and distracted" by trial of a *Bivens* action that should be prevented by the judgment bar, the Court held that these public interests were insufficient to justify granting immediate appeal of the order as of right and divestiture of district court jurisdiction. *Hallock*, 126 S. Ct. at 960. If a *Bivens* suit against federal agents in violation of the Tort Claims Act's judgment bar does not "imperil a substantial interest," *a fortiori* a suit against private individuals for their private allegedly tortious conduct does not. *Cf. Digital Equip.*, 511 U.S. at 865 (holding that an order rescinding a settlement agreement between private parties is not within the collateral order doctrine).

This court addressed this issue in its December 2, 2005 order:

> Defendants' argument that a stay pending an immediate appeal of an adverse decision is required by the Act rests inappositely, on *Harlow v. Fitzgerald* and its progeny, which consider whether absolute or qualified immunity for government officials should be resolved in advance of trial. . . .
> The courts' concerns in [cases granting immunity] were with "subjecting officials to the risks of trial"—risks which are peculiar to the government and public officials, such as "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." The courts were concerned about burdening the government while immunity was considered. Defendants are not government officials, and they cite no authority for the proposition that private parties should receive the same immunity benefits as government officials. Their claim that the purpose of the [PLCAA] was to spare them litigation expenses in the case at hand only assumes what it seeks to prove.

*City of New York v. Beretta*, F. Supp. 2d , (E.D.N.Y. 2005) (citations omitted).

In the interest of judicial economy, and in light of the importance of the issues raised by

15

the 2006 rider to resolving the litigation, the court granted a discretionary stay. *Id.* It is to serve those same interests that the court dissolved the stay. Whether or not the court finds that the 2006 rider, as a practical matter, requires dismissal of the suit, the aggrieved party will have the right to appeal, consolidating before the Court of Appeals—should that Court so permit—all statutory issues in the case, serving one of the goals of the final judgment rule: discouraging repeated appeals. *See Weaver v. University of Cincinnati*, 970 F.2d 1523, 1528-29 (6th Cir. 1992) (judicial economy would be best served by merging any new appeal from a final judgment of the district court that is entered during pendency of an interlocutory appeal with the still-pending appeal from the initial interlocutory order).

## IV. Conclusion

This court retains jurisdiction of issues unrelated to the applicability of the Protection of Lawful Commerce in Arms Act to this litigation. The parties shall submit briefs on the applicability and constitutionality of the 2006 rider by April 7, 2006.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: March 7, 2006
Brooklyn, New York